AUTORIDAD SOBRE HOGARES DE PUERTO RICO, demandante y apelada, *v.* SATURNINA SAGASTIVELZA ÁLVAREZ, JOHN DOE y RICHARD ROE, o sea los herederos desconocidos de ROSARIO ÁLVAREZ, demandados y apelantes.

Núm. 10383.—*Sometido:* Marzo 1, 1951. *Resuelto:* Marzo 6, 1951.

*Arturo Ortiz Toro,* abogado de la apelante Señora Sagastivelza Álvarez; *Rafael B. Pérez Mercado,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Denegada por este Tribunal en 23 de mayo de 1950 una "Moción Solicitando Reversión del Título y Posesión de la Propiedad" presentada ante nos por la demandada Sagastivelza Álvarez, fundados en que no habiéndose planteado ni resuelto previamente ante el Tribunal de Expropiaciones la cuestión por ella suscitada, no debíamos conocer de la misma como parte integrante de la apelación que pendía ante nos y en que no siendo éste un Tribunal de primera instancia

sólo podíamos conocer de aquellos casos y recursos en que por ley se nos había dado jurisdicción original ([1]) dicha demandada acudió ante el Tribunal de Expropiaciones de Puerto Rico en 3 de junio del referido año con una moción de idéntica naturaleza. Alegó en ella sustancialmente que la demandada Sagastivelza Álvarez en y antes del 11 de diciembre de 1944 era dueña en pleno dominio de una finca de 38.24 cuerdas situada en el Barrio Viví Abajo del término municipal de Utuado; que la Autoridad demandante estableció ante la Corte de Distrito de Arecibo una demanda de expropiación allá para el 11 de diciembre de 1944 y consignó en la secretaría de dicha Corte como compensación justa y razonable a ser pagada la suma de $10,702, suma que la demandada ha rechazado en su totalidad en todo tiempo por haber entendido que la acción es improcedente; que el caso fué trasladado al Tribunal de Expropiaciones, ([2]) donde una vez celebrado el juicio correspondiente se dictó en 6 de junio de 1949 sentencia declarando definitivamente expropiada la finca en cuestión a favor de la demandante; que no obstante haber transcurrido 11 meses 21 días desde que se dictó la referida sentencia ordenando la expropiación, la Autoridad demandante no ha hecho uso de la propiedad; que de acuerdo con la sección 7 de la Ley de Expropiación Forzosa de 12 de marzo de 1903 (pág. 50), según estaba en vigor a la fecha de iniciarse la acción, si el expropiante no hacía uso de la propiedad expropiada dentro del término de seis meses en caso de que no se señalase tiempo alguno, a contar de la fecha en que se dicta la resolución final, la parte desposeída puede recuperar la propiedad devolviendo la cantidad recibida; y que según la mejor información y creencia de la demandada, la demandante ha cedido en arrendamiento la propiedad en cuestión a una tercera persona para la siembra de frutos

---

[1] Véase *Autoridad Sobre Hogares* v. *Sagastivelza,* 71 D.P.R. 436.
[2] Artículo 4 de la Ley 223 de 15 de mayo de 1948, págs. 775, 779.

menores, es decir para un fin extraño y distinto a aquéllos para los cuales se expropió la finca.

A la anterior moción de la demandada Sagastivelza Álvarez la Autoridad demandante se opuso, alegando, entre otros motivos (1) que el Tribunal de Expropiaciones carece de jurisdicción para conceder el remedio solicitado; (2) que cuando se celebró la vista del caso, al igual que cuando se dictó la sentencia de 6 de junio de 1949, ya la sección 7 de la Ley de Expropiación Forzosa en que se apoya la demandada había sido derogada por el artículo 3 de la Ley Núm. 105 de 1948 ((1) pág. 241), por lo que dicha demandada no tiene derecho a la reversión por ella interesada; (3) que en la actualidad el único derecho de la persona contra quien se ha tramitado un procedimiento de expropiación es el conferídole por la Ley 441 de 14 de mayo de 1947 ((1) pág. 921), según quedó enmendada por la Ley 375 de 14 de mayo de 1949 ((1) pág. 1149), consistente en una preferencia a readquirir dichos bienes cuando el poder expropiante, "resolviere enajenar, total o parcialmente, los bienes expropiados"; y (4) que la interpretación dada por este Tribunal a la sección 7 supra, es errónea, en tanto en cuanto resolvimos que las disposiciones de la misma son aplicables a la demandante.

Luego de una vista, el Tribunal de Expropiaciones dictó resolución declarándose sin jurisdicción para conocer de la cuestión así planteádale. Se basó en que habiendo las partes apelado para ante este Tribunal Supremo de la sentencia allí dictada en los méritos del caso, carecía de jurisdicción para conocer del recurso, a tenor de lo provisto por el artículo 297 del Código de Enjuiciamiento Civil. Declaró, por ende, sin lugar la moción. De la resolución así dictada apeló la demandada y para sostener su recurso sostiene que fué un error del tribunal inferior declararse sin jurisdicción para conocer de dicho incidente. Este error fué a nuestro juicio cometido.

El artículo 297 del Código de Enjuiciamiento Civil, en que se fundó el Tribunal de Expropiaciones, provee que:

"Formalizada una apelación, producirá el efecto de suspender todo procedimiento en la corte inferior, respecto a la sentencia u orden apelada, o a las cuestiones comprendidas en ella, *pero la corte inferior podrá proseguir el pleito en lo que respecta a cualquier extremo del mismo no comprendido en la apelación.*" (Bastardillas nuestras.)

Antes de proseguir esta opinión es conveniente indicar, aunque ello sea una disgresión, que en marzo 20 de 1947 los demandados radicaron ante la Corte de Distrito de Arecibo su primera moción de esta índole, solicitando asimismo la reversión del título y posesión de la propiedad. Se fundaron en que toda vez que la orden final en el procedimiento de expropiación fué dictada el 8 de noviembre de 1945 y en que toda vez que habían transcurrido desde entonces más de seis meses sin que la Autoridad expropiante hubiera hecho uso de la finca objeto del recurso para el fin alegado en su demanda de expropiación, procedía la reversión alegada. Resolvimos que aquella acción era prematura, puesto que dicho período debía contarse desde que se dictara la sentencia final y definitiva y no desde la fecha de la orden mencionada. Véase *Autoridad Sobre Hogares* v. *Corte*, 68 D.P.R. 54; *Sagastivelza* v. *Puerto Rico Housing Authority*, 171 F.2d 563.

Como se ha visto, el artículo 297 del Código de Enjuiciamiento Civil dispone de manera clara que formalizada una apelación, ésta tiene el efecto de suspender todo procedimiento en la corte inferior, respecto a la sentencia u orden apelada, así como respecto a las cuestiones comprendidas en ella. También, que "La corte inferior podrá proseguir el pleito en lo que respecta a cualquier extremo del mismo no comprendido en la apelación." Sin embargo, la única relación que tiene con la sentencia apelada la moción de reversión radicada por la demandada Sagastivelza Álvarez lo es, que la fecha de la sentencia en los méritos del caso es el punto de partida que

inicia el período de seis meses a que hacía referencia la Ley de Expropiación Forzosa. Por tanto, puede decirse que la moción de reversión no es una cuestión comprendida en la sentencia definitiva. Siendo ello así, claramente se infiere que a tenor de lo dispuesto por las palabras finales del artículo 297 supra, el Tribunal de Expropiaciones tenía jurisdicción para conocer de la moción que tuvo ante su consideración.

Interpretando el artículo 297 supra, ya hemos resuelto que no obstante haberse apelado de la sentencia para ante nos, la corte inferior conserva jurisdicción para conocer de recursos relacionados con el aseguramiento de la sentencia dictada, al igual que para conocer de mociones de nuevo juicio y de todo lo relacionado con la transcripción de evidencia requerida por ley para perfeccionar la apelación. Todo ello es así, porque al igual que el de reversión aquí envuelto, esos son extremos no comprendidos en la sentencia apelada. *Gandía* v. *Porto Rico Fertilizer Company*, 30 D.P.R. 262; *Buxó, Jr.* v. *Corte*, 51 D.P.R. 322, 327; *Molina* v. *Rodríguez*, 63 D.P.R. 477; *Guilhon & Barthelemy* v. *Corte*, 64 D.P.R. 303. Conforme se dice en 2 Cal. Jur., pág. 418, sección 180, "Una apelación no tiene el alcance de privar a la corte sentenciadora de jurisdicción para conocer y determinar cuestiones que surgen en procedimientos independientes y colaterales a aquél en que se dictó la sentencia u orden apelada." En igual sentido se pronuncia 3 Am. Jur., pág. 194, sección 531. Constituyendo, como hemos ya indicado, la moción de reversión radicada por la demandada un procedimiento independiente, aunque íntimamente relacionado con aquél en que se dictó la sentencia, la apelación interpuesta contra ésta no privó de jurisdicción al Tribunal de Expropiaciones para conocer de la misma.

■■ La demandante insiste también en que el Tribunal de Expropiaciones carecía de jurisdicción para conocer de la moción de reversión, por ser ésta algo extraño y ajeno a

la expropiación en sí, por lo que tal cuestión debió suscitarse en un tribunal de distrito de jurisdicción general. Discrepamos. Por el artículo 3 de la Ley núm. 223 de 15 de mayo de 1948 (pág. 775), que creó el Tribunal de Expropiaciones de Puerto Rico, según fué enmendado por la Ley núm. 178 de 4 de mayo de 1949, (págs. 561, 563) se dispone que:

"El Tribunal de Expropiaciones de Puerto Rico ejercerá con carácter exclusivo y en todo el territorio de Puerto Rico, la misma jurisdicción original que en casos de expropiación forzosa de la propiedad para fines públicos han venido ejerciendo el Tribunal del Distrito Judicial de San Juan y las Cortes de Distrito hasta la fecha en que entre en vigor esta Ley."

Es incuestionable que antes de la aprobación de esa ley una moción de reversión como la aquí envuelta debía propiamente ser radicada ante el tribunal de distrito que conoció del pleito de expropiación. Habiéndose dado al Tribunal de Expropiaciones de Puerto Rico con carácter exclusivo la misma jurisdicción original que en casos de expropiación forzosa tenían las Cortes de Distrito antes de la aprobación de la Ley 223, es ilógico suponer que tal jurisdicción se le dió tan sólo fraccionadamente y que el Tribunal de Expropiaciones puede hoy en día conocer del recurso de expropiación, mas no de un incidente relacionado con la reversión de la finca expropiada.

Así pues, el Tribunal de Expropiaciones tenía jurisdicción para conocer de la moción que tuvo ante sí. Empero, no habiéndose dictado aún la sentencia final y definitiva a que hicimos referencia en nuestra opinión de 23 de enero de 1948 ya citada (68 D.P.R. 54) era incuestionable que la moción de reversión de la demandada había sido presentada prematuramente y que por tal motivo debía ser declarada sin lugar.

■■ No obstante, a fin de no dilatar más la resolución final de la cuestión, que como hemos visto ha sido suscitada ya en tres ocasiones, procederemos a discutir otro de los pun-

tos levantados por la apelada. . Éste es al efecto de que cualquier derecho de reversión que pudiera haber tenido la demandada bajo la sección 7 de la Ley de Expropiación Forzosa dejó de existir por haber sido dicha sección derogada. La sección 7 de la Ley de Expropiación Forzosa aprobada el 12 de marzo de 1903, (pág. 50), Estatutos Revisados de 1911, (pág. 89), Código de Enjuiciamiento Civil, ed. 1933, (pág. 301), según fué enmendada por la Ley de 12 de marzo de 1908, (pág. 98), proveía que:

"En todos los casos de expropiación forzosa, o de venta, cesión o gravamen voluntario de la propiedad, hecha por el dueño para la realización de una obra de utilidad pública, si no se llevare a cabo dicha obra dentro del término señalado en la concesión o franquicia, o en caso de que en ella no se señalare tiempo alguno, dentro del plazo de seis meses, a contar desde la fecha en que se dicte la sentencia ordenando la expropiación, la parte expropiada o que voluntariamente vendió, cedió o gravó, su dominio, tendrá derecho de acción para recuperar la propiedad expropiada devolviendo el importe recibido."

Esa sección fué, sin embargo, derogada expresamente por el artículo 3 de la Ley 105 de 7 de mayo de 1948 (págs. 241, 247). Así pues, cuando en 3 de junio de 1950 se radicó ante el Tribunal de Expropiaciones de Puerto Rico la moción de reversión de la demandada a que tantas veces hemos aludido ya dicha sección había dejado de existir. Sostiene, no obstante, la demandada que toda vez que la acción fué iniciada en época en que dicho artículo estaba en toda su fuerza y vigor, surgió en su favor, a pesar de la derogación de la sección 7, un derecho adquirido que debe ser respetado, y que en armonía con lo dispuesto en dicha sección ella tiene derecho a la reversión interesada. Obvio es que en el presente caso mientras estuvo en vigor la sección 7 a la demandada no le fué posible ejercitar de acuerdo con la ley el derecho a solicitar la reversión de la propiedad expropiádale. Ya hemos indicado que una acción por ella establecida en 20 de marzo de 1947, tomando como punto de partida la fecha de la orden de

incautación—no la de la sentencia final o definitiva—fué declarada sin lugar por prematura. El hecho de que la demanda de expropiación se radicara en época en que estaba en vigor la sección 7 no da de por sí a la demandada un derecho a la reversión de la propiedad, ya que ese derecho, si acaso, surgía una vez expirados los seis meses siguientes a la fecha en que se dictara la sentencia final y definitiva de expropiación. Tal sentencia no se ha dictado aún. Desde la radicación de la demanda de expropiación hasta el día en que se dictara la sentencia final y definitiva la demandada tenía meramente un derecho en embrión, en expectación (*right in expectancy*) a la reversión de la propiedad, pero ese derecho en perspectiva nunca se materializó antes de dictarse la sentencia definitiva y por ende, nunca se convirtió en un derecho adquirido. Según dijimos en *Rodríguez* v. *Miller*, 23 D.P.R. 594, 602 "que esa mera expectativa jamás puede ser considerada como un derecho adquirido es un principio sumamente elemental," citando Cooley's *Constitutional Limitations*, pág. 511. [3] En su consecuencia no procede la reversión solicitada.

Habiendo sido derogada, como ya hemos indicado, la sección 7 de la Ley de Expropiación, y no tratándose de un caso en que la agencia que tiene inscrito a su nombre el título de la propiedad expropiada ha resuelto enajenar la misma, total o parcialmente, [4] se hace innecesario discutir las cuestiones

[3] Véanse también *Luján* v. *Comisión de la Policía Insular*, 38 D.P.R. 58; Cooley's *Constitutional Limitations, Eighth Edition*, pág. 749; Cf. *Zayas Pizarro* v. *Molina*, 50 D.P.R. 647; y *Oliveras* v. *Registrador*, 13 D.P.R. 106.

[4] De acuerdo con el artículo 1 de la Ley 441 de 14 de mayo de 1947, pág. 921, según fué enmendado por la Ley 375 de 14 de mayo de 1949, pág. 1149, "Las personas naturales o jurídicas contra las cuales se hubiere tramitado recurso de expropiación por. . . . agencias o instrumentalidades, tendrán derecho preferente a readquirir su posesión y título sobre dichas propiedades, cuando El Pueblo de Puerto Rico o el departamento, agencia o instrumentalidad suya que tuviese inscrito a su nombre el título de dicha propiedad resolviese enajenar, total o parcialmente, los bienes expropiados;. . . ." No es ésa, sin embargo, la situación aquí envuelta.

tercera y cuarta suscitadas por la demandante en su oposición a la moción de reversión de la demandada.

No obstante el error cometido por el tribunal inferior al declararse sin jurisdicción para conocer de la moción de la demandada Sagastivelza Álvarez, su resolución apelada no será revocada, *y por los motivos antes expuestos se dictará sentencia confirmando dicha resolución y declarando sin lugar la moción de la demandada.*