ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **CRISTINA DOMÍNGUEZ, MARÍA ARAYA & ANA RUBIERA**<br><br>Recurridos<br><br>v.<br><br>**TRADITION FRANCAISE, INC. & FERNANDO PÉREZ como Presidente y en su carácter personal**<br><br>Peticionarios | KLCE202400305 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2019CV10058**<br><br>Sobre: Discrimen, Despido Constructivo, Hostigamiento Sexual, Acoso Laboral, Represalias y Daños |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico a 13 de mayo de 2024.

Comparecen ante nos, mediante *Petición de Certiorari*, Tradition Francaise, Inc. (Tradition) y el señor Fernando Pérez (Sr. Pérez), como Presidente y en su capacidad personal (en conjunto, Peticionarios). En dicha comparecencia, solicitan que revoquemos varias órdenes emitidas por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). En estas, el TPI determinó No Ha Lugar a la paralización de los procedimientos en contra de Tradition y del Sr. Pérez en los foros estatales luego de que Tradition haya radicado una quiebra en el foro federal.[1] El TPI también ordenó el embargo de

---

[1] Apéndice de *Petición de Certiorari*, *Orden de 6 de marzo de 2024*, págs. 349-351. Notificada y archivada en autos el 6 de marzo de 2024.

bienes y la prohibición de enajenar en contra del Sr. Pérez y de Tradition.[2]

Por los fundamentos que discutimos a continuación, expedimos el auto de *certiorari* y modificamos las órdenes recurridas.

**I.**

El caso de marras tiene su origen el 23 de septiembre de 2019, cuando las señoras Cristina Domínguez, María Araya y Ana Rubiera (en conjunto, Demandantes o Recurridas) presentaron una *Demanda* en contra de los Peticionarios por discrimen laboral, hostigamiento sexual, acoso laboral, despido constructivo, represalias y daños.[3] El 16 de febrero de 2024, el TPI emitió una *Sentencia* en el caso, fallando a favor de las Demandantes e imponiéndole a los Peticionarios una indemnización total de $1,399,310.91.[4]

Así las cosas, el 20 de febrero de 2024, las Demandantes presentaron una *Moción Solicitando Orden de Embargo y Prohibición de Enajenar*,[5] por lo que el TPI le concedió a los Peticionarios hasta el 1 de marzo de 2024 para que mostraran causa por la cual no debería proceder con la orden de embargo.[6] El 1 de marzo de 2024, los Peticionarios presentaron una *Notificación*[7] al TPI mediante la cual le informaron que ese mismo día, Tradition presentó una petición de quiebra bajo el Capítulo 11 del Código de Quiebra de los Estados Unidos, 11 U.S.C. sec. 1101 *et seq.*, en el Tribunal federal de Quiebras para el Distrito de Puerto Rico.[8] En esta, los

---

[2] *Íd.*, *Orden de Embargo y Prohibición de Enajenar de 6 de marzo de 2024*, págs. 352-355. Notificada y archivada en autos el 6 de marzo de 2024.
[3] *Íd.*, *Demanda*, págs. 1-31.
[4] *Íd.*, *Sentencia de 16 de febrero de 2024*, págs. 284-315. Notificada y archivada en autos el 20 de febrero de 2024.
[5] *Íd.*, *Moción Solicitando Orden de Embargo y Prohibición de Enajenar*, págs. 316-322.
[6] *Íd.*, *Notificación de 20 de febrero de 2024*, pág. 323.
[7] *Íd.*, *Notificación de Presentación de Petición de Quiebra y Paralización Automática*, págs. 336-340.
[8] Véase *Ex Parte Tradition Francaise, Inc.*, Case Num. 24-00841-11.

Peticionarios solicitaron la paralización de los procedimientos en el foro estatal por virtud de la paralización automática que provee la Sección 362(a) del Código de Quiebras, *supra*. Es importante señalar que la petición de quiebra fue presentada únicamente por Tradition; el Sr. Pérez no radicó una petición de quiebra en su capacidad personal.

Luego de considerar la posición de las Demandantes en cuanto a la *Notificación de la Presentación de Quiebra*, el 6 de marzo de 2024,[9] el TPI emitió las órdenes recurridas en el caso ante nuestra consideración. En particular, la *Orden* dispone "No Ha Lugar, puesto que los procedimientos que se afectan con la presentación de una petición de quiebra no se ven afectados por orden o disposición que emita el foro estatal".[10] Ante esta determinación, los Peticionarios presentaron una *Moción de Reconsideración*[11] de las órdenes, a la cual el TPI determinó No Ha Lugar el 7 de marzo de 2024.[12]

Inconformes con esta determinación, el 12 de marzo de 2024, los Peticionarios presentaron conjuntamente la *Petición de Certiorari* que tenemos ante nuestra consideración, y una *Moción de Auxilio de Jurisdicción para Paralización de Procedimientos ante Tribunal de Primera Instancia*, donde solicitaron la paralización inmediata de los procedimientos y de la orden de embargo en contra de Tradition y del Sr. Pérez. En cuanto a la *Moción de Auxilio*, el 12 de marzo de 2024, este Tribunal ordenó la paralización de los procedimientos únicamente a favor de Tradition, y no con relación al Sr. Pérez, hasta que dispongamos otra cosa. El 15 de marzo de 2024, nos sostuvimos en nuestra determinación.

---

[9] Apéndice, *supra*, *Moción en Cumplimiento de Orden y para que se dé por Sometida Solicitud de Orden de Embargo y Prohibición de Enajenar*, págs. 344-348.
[10] *Íd.*, *Orden de 6 de marzo de 2024*, pág. 350.
[11] *Íd.*, *Urgente Moción de Reconsideración en Cuanto a las Órdenes Núm. 107 y 109*, págs. 356-381.
[12] *Íd.*, *Resolución de 7 de marzo de 2024*, pág. 383.

En la *Petición de Certiorari,* los Peticionarios señalaron tres errores. Estos son:

**PRIMERO: ERRÓ EL TPI AL EMITIR LA *ORDEN DE NO PARALIZACIÓN* Y NEGARSE A RECONOCER LA PARALIZACIÓN AUTOMÁTICA DE LOS PROCEDIMIENTOS EN TORNO A TRADITION, LUEGO DE ÉSTA PRESENTAR UNA PETICIÓN DE QUIEBRA EN EL TRIBUNAL FEDERAL DE QUIEBRAS, Y ACTUAR SIN JURISDICCIÓN AL ASÍ EMITIR LA *ORDEN DE EMBARGO* EN SU CONTRA.**

**SEGUNDO: ERRÓ EL TPI AL EMITIR LA *ORDEN DE EMBARGO* POR SER NULA E ILEGAL EN CUANTO AL PETICIONARIO SR. PÉREZ PORQUE LA SENTENCIA QUE PRETENDE EJECUTAR NO ES FINAL Y FIRME.**

**TERCERO: ERRÓ EL TPI AL EMITIR LA *ORDEN DE EMBARGO* POR SER EXCESIVA E INCIDIR SOBRE BIENES INEMBARGABLES.**

Con el beneficio de la comparecencia de las partes, sus alegatos y los documentos que obran en el expediente, procedemos a discutir el derecho aplicable.

**II.**

**A.**

El auto de certiorari es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior." *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

La Regla 52.1 de Procedimiento Civil dispone que un recurso de certiorari sólo será expedido cuando se recurra de una resolución u orden bajo las Reglas 56 (Remedios Provisionales) y 57 (Injunctions) de Procedimiento Civil o una denegatoria de una

moción de carácter dispositivo. Además de lo anterior, y a modo de excepción, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre: 1) la admisibilidad de testigos de hecho o de peritos esenciales; 2) asuntos relativos a privilegios probatorios; 3) anotaciones de rebeldía; 4) casos de relaciones de familia; 5) casos que revistan interés público; o, 6) cualquier otra situación en la cual esperar la apelación constituiría un fracaso irremediable de la justicia.

Una vez adecuadamente presentado un recurso de certiorari, el Tribunal de Apelaciones deberá ejercer su discreción y evaluar la petición tomando en consideración los criterios enumerados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. Deberá evaluar:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

El Código de Quiebras de los Estados Unidos, *supra*, provee un procedimiento mediante el cual un deudor puede recibir protecciones contra acciones de cobro por parte de sus acreedores, reorganizar sus deudas y readquirir estabilidad financiera. Estos procedimientos están regulados exclusivamente por el Congreso de los Estados Unidos, por virtud del Artículo 1, Sección 8 de la Constitución de Estados Unidos, LPRA, Tomo 1. "La legislación de

quiebras federal constituye campo ocupado para los estados, por lo que éstos no pueden legislar en contravención a lo allí dispuesto". *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 490 (2010).

El Código de Quiebras provee como protección básica la paralización automática de la Sección 362(a). "Ésta impide, entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra". *Íd.,* pág. 491. En consecuencia, la paralización automática provoca "que los tribunales estatales queden privados de jurisdicción automáticamente, e, incluso, es tan abarcadora que paraliza litigios que tienen poco o nada que ver con la situación financiera del deudor". *Íd.* Ahora bien, esto no impide que un litigio continúe en otros foros, pero su continuación depende de la anuencia del tribunal federal donde se ventile el proceso de quiebras. Este tomará la decisión para proveer alivio de la paralización automática luego de considerar si existe justa causa o el acreedor demuestra cumplimiento con las condiciones específicas detalladas en la Sección 362(d) del Código de Quiebras.

## C.

El embargo de bienes y la prohibición de enajenar son medidas de aseguramiento reconocidas por nuestro ordenamiento jurídico cuyos efectos son asegurar la efectividad de una sentencia. La Regla 56.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 56.1, dispone que el aseguramiento puede solicitarse tanto antes como después de dictada la sentencia. La misma puede efectuarse tanto en cuanto a bienes inmuebles como bienes muebles, independientemente de que estén en posesión del deudor o de un tercero. R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil,* 6ª ed. rev., San Juan, LexisNexis de Puerto

Rico, 2017, pág. 187-188. Sobre la anotación de embargo, nuestro Tribunal Supremo ha determinado que:

> **El propósito de la anotación de embargo es proteger la efectividad de los dictámenes judiciales** y mantener el statu quo existente al momento de iniciarse el pleito. Tanto nuestra jurisprudencia como la doctrina reconocen que **se puede solicitar el aseguramiento de una sentencia aunque el dictamen que se pretende asegurar haya sido apelado o se haya presentado recurso de *certiorari*.**
> *Vargas v. González*, 149 DPR 859, 865 (1999) (*per curiam*). (Citas omitidas). (Énfasis nuestro).

### III.

Con el derecho aplicable esbozado, estamos en posición para resolver. Recordemos que tenemos ante nuestra consideración tres errores. Esto son: (1) erró el TPI al no paralizar los procedimientos con relación a Tradition luego de que este haya radicado una petición de quiebra ante el tribunal federal; (2) erró el TPI al emitir una *Orden de Embargo* nula por no diferenciar entre bienes embargables e inembargables; y, (3) erró el TPI al emitir una *Orden de Embargo y Prohibición de Enajenar* en contra del Sr. Pérez antes de que la *Sentencia* adviniera final y firme.

En cuanto a la *Orden de No Paralización*, la Sección 362(a) del Código de Quiebras es clara. Esta impide que un tribunal continúe un procedimiento cuyo inicio haya sido previo a la presentación de la petición de quiebra ante el foro federal. En efecto, la paralización automática de la Sección 362(a) priva a los foros estatales de jurisdicción para continuar los procedimientos con relación a la parte. En el caso de marras, el TPI determinó no paralizar los procedimientos en cuanto a Tradition el 6 de marzo de 2024, pese que este le había notificado al TPI sobre la presentación de una petición de quiebra ante el Tribunal federal el 1 de marzo de 2024. En consecuencia, el TPI perdió jurisdicción sobre Tradition. Cualquier orden con posterioridad a la petición de quiebra que tenga efectos sobre Tradition es nula. En consecuencia, la *Orden de*

*Embargo y Prohibición de Enajenar* es nula en cuanto a Tradition por haber sido dictada en su contra el 6 de marzo de 2024, cinco días luego de que la paralización automática de la Sección 362(a) entró en vigor. En consecuencia, se cometió el error señalado.

Los peticionarios también levantan como error el hecho de que la *Orden de Embargo y Prohibición de Enajenar* es nula en su totalidad por ser excesiva e incidir sobre bienes inembargables. Esta conclusión es errónea e irrazonable. Argumenta la parte peticionaria que la *Orden de Embargo* no hace distinción entre bienes embargables e inembargables, por lo que violenta sus derechos reconocidos constitucionalmente, por estatuto y por jurisprudencia.[13]

No le asiste la razón al peticionario. Lo cierto es que el Sr. Pérez goza de las protecciones que nuestro ordenamiento jurídico ha reconocido, sin embargo, la *Orden de Embargo* no las perjudica. Se sobre entiende que los bienes inembargables están protegidos de un proceso de embargo, por lo que no es necesario que la *Orden de Embargo* haga distinción entre estos y los embargables. Distinto hubiese sido si la *Orden de Embargo* ordenara de manera expresa el embargo de bienes aunque sean inembargables. De esa forma, la *Orden de Embargo* hubiese sido nula por su contenido contrario al derecho. No obstante, como está redactada actualmente, la *Orden de Embargo* es válida. Esto no impide que, en un futuro, si se embarga un bien inembargable del Sr. Pérez, este no pueda levantar una reclamación ante los tribunales por haber sufrido un daño a

---

[13] Como parte del derecho a la vida, libertad y al disfrute de la propiedad, el Art. II, Sec. 7 de la Constitución de Puerto Rico dispone que "[l]as leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo". Const. ELA, Const. PR, LPRA, Tomo 1. En cumplimiento con esta protección, la Asamblea Legislativa y los tribunales han protegido en contra de embargo varios bienes. Véanse, Art. 1157 Código Civil de 2020, 31 LPRA sec. 9302; Art. 249 Código de Enjuiciamiento Civil, 32 LPRA sec. 1130; Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195-2011; *Quiles Algarín v. ULEES*, 200 DPR 588 (2018); *Candelario Vargas v. Muñiz Díaz*, 171 DPR 530 (2007); *Librotex, Inc. v. AAA*, 138 DPR 938 (1995); *ELA v. Tribunal Superior*, 98 DPR 524 (1970).

sus derechos y patrimonio. Como esto aún no ha ocurrido, no se cometió el error señalado.

Finalmente, en cuanto a la *Orden de Embargo y Prohibición de Enajenar,* hemos reiterado en múltiples ocasiones que el nombre no hace la cosa. "[E]n áreas de interés público, los tribunales tienen la obligación judicial de pasar juicio sobre la naturaleza de las circunstancias y evaluar el remedio a conceder o lo que proceda en derecho, independientemente de la forma como se solicite". *Otero Vélez v. Schroder Muñoz,* 200 DPR 76, 90 (2018). Luego de evaluar la *Orden de Embargo,* surge claramente que esta no es una orden con el propósito de ejecutar una sentencia. Al contrario, el embargo y prohibición de enajenar en este caso tiene el propósito de asegurar una futura ejecución de sentencia; es una medida preventiva. Luego de que la *Sentencia* advenga final y firme, el TPI puede entonces emitir una orden de embargo con la intención de ejecutar la sentencia. Por lo tanto, no se cometió el error señalado.

Por lo discutido anteriormente, procede revocar la *Orden de No Paralización,* puesto que la Sección 362(a) paraliza automáticamente todo procedimiento en contra de Tradition y priva a los tribunales de Puerto Rico de jurisdicción durante la vigencia del proceso de quiebras en la corte federal. Además, modificamos la *Orden de Embargo y Prohibición de Enajenar* para eliminar sus efectos con relación a Tradition y para aclarar que esta es una *Orden* provisional y preventiva con el propósito de asegurar la *sentencia.* Sin embargo, estas siguen siendo válidas en cuanto al Sr. Pérez.

## IV.

Por las razones discutidas, expedimos el auto de *certiorari* y modificamos las órdenes recurridas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones